UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------------------------------------x
SINOTAU PHARMACEUTICAL GROUP,

                               Plaintiff,                     Case No.

     v.

NAVIDEA BIOPHARMACEUTICALS, INC.,        **TRIAL BY JURY DEMANDED**

                               Defendant.
----------------------------------------------------------------x

## COMPLAINT

Plaintiff, Sinotau Pharmaceutical Group ("Sinotau"), for its Complaint against Navidea Biopharmaceuticals, Inc. ("Navidea"), alleges and complains as follows:

### NATURE OF ACTION

1.      Sinotau brings this action for breach of contractual and common law duties against Navidea.  These claims arise out of Navidea's breach of its contractual obligations to Sinotau by their refusal to abide by the terms of the parties' Agreement and license its NAV4694 product and related technology to Sinotau.  The claims against Navidea are also centered upon its interference with Sinotau's prospective business relations.

### PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff, Sinotau, is a Chinese corporation having its principle place of business in Beijing, China.

3.      Defendant Navidea is a Delaware corporation with its principal place of business in Dublin, Ohio.

4.      Sinotau has been damaged in excess of $75,000, exclusive of interest and costs.

5.      This Court has subject matter jurisdiction over Sinotau's claims under 28 U.S.C. §§ 1332, and 1367.

6.      Venue is proper in this district under 28 U.S.C. § 1391(a) because Defendants are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to Sinotau's claims occurred in this district.

7.      Within this district, Sinotau has taken steps to open new United States offices, contract new personnel, and engage in joint venture partnerships specific to development of the product covered by the licensing agreement at issue in this lawsuit and for the purpose of successfully developing and performing under the contract at issue.

8.      Sinotau is in the business of registering, commercializing, and distributing pharmaceutical and other medical technology used for diagnostic as well as therapeutic application.

9.      Sinotau's portfolio of licenses and other intellectual property includes products used in oncology, antiretroviral, central nervous system, and cardiovascular system therapies.

10.     Navidea is similarly engaged in business as a developer and distributor of pharmaceutical and medical technology.  Like Sinotau, Navidea possesses a portfolio of licenses and other intellectual property relating to products used for medical diagnosis and therapy.

11.     Specifically, Navidea holds an exclusive license covering patent rights owned or controlled by AstraZeneca AB ("AZ"), and is the exclusive licensee of certain "know-how" as developed by AZ under an agreement (the "Navidea-AZ License Agreement") entered into between Navidea's predecessor Neoprobe Corporation and AZ.

12.     The product covered by this agreement is known as NAV4694 – a radiopharmaceutical imaging agent used for the diagnosis, imaging, or other assessment of central nervous system disorders.

13.     Pursuant to the Navidea-AZ License Agreement, Navidea owns the transferrable

right to manufacture, develop, and commercialize NAV4694, as well as other related methods,

products, patents, patent applications, know-how, trade secrets, and other proprietary rights,

including all right, title and interest in and to any regulatory materials.

14.     In the months of December 2014 and January 2015, Navidea notified Sinotau of

its intent to divest its interest in NAV4694 and asked Sinotau to evaluate the assumption of

Navidea's global development path for the asset and Navidea's worldwide license.

15.     To meet Navidea's request, Sinotau expended considerable time and resources to

develop the appropriate financial and business summaries and cultivate initial relationships with

collaborative partners and potential investors.

16.     In February 2015, Navidea met with Sinotau in Beijing to conclude a draft outline

of an agreement and develop an expedited strategy to assume all of the clinical and

administrative requirements by on or before April 30, 2015.

17.     In March 2015, Navidea and Sinotau entered into a "Binding Term Sheet for

Exclusive License," under which Navidea became contractually bound to enter into an exclusive

licensing agreement granting Sinotau its rights under the Navidea-AZ License Agreement,

including an exclusive license, "with the right to transfer and the right to grant and authorize

sublicenses," to NAV4694 and related intellectual property and regulatory rights in exchange for

agreed-upon royalties and lump payments to be paid by Sinotau to Navidea.

18.     The "Binding Term Sheet for Exclusive License" also expressly contemplated

that, while in effect, Navidea would not discuss any additional potential licensing arrangements

of any scope with any third party without the direct permission of Sinotau and, even then, for the

exclusive purpose of providing further technical know-how beneficial to Sinotau.

19.     The "Binding Term Sheet for Exclusive License" expressly contemplated that "all

material terms of the agreement are set forth" therein and that the "terms and conditions not set forth [in the Binding Term Sheet for Exclusive License] will be added to the final agreement" and that "such terms and conditions will be those that are reasonable in the industry."

## DEFENDANT'S WRONGFUL CONDUCT

20.     The "Binding Term Sheet for Exclusive License" contemplated the occurrence of two conditions precedent to trigger Navidea's obligation to enter into the exclusive licensing agreement with Sinotau.

21.     The first condition precedent was the renegotiation of the Navidea-AZ License Agreement to include economic terms acceptable to Sinotau as specified in the separate "updated proposal for worldwide Licensing of NAV4694" forwarded by Navidea to Sinotau March 4, 2015.

22.     The Navidea-AZ License Agreement has been renegotiated to reflect terms acceptable to Sinotau and thus the first condition precedent has been satisfied.

23.     The second condition precedent was that due diligence be completed to the satisfaction of Sinotau on or before the agreed-upon date of June 30, 2015, as reflected in the "Extension Of Binding Term Sheet For Exclusive License" executed by Navidea and Sinotau on April 30, 2015, and again in a second "Extension Of Binding Term Sheet For Exclusive License" executed by both parties on May 27, 2015.

24.     This second condition precedent has also been satisfied as reflected in multiple correspondence sent from Sinotau to Navidea on and before June 30, 2015 acknowledging that Sinotau desired to proceed with the agreement after completing its due diligence.

25.     After the "Binding Term Sheet for Exclusive License" was executed, the parties began exchanging draft licensing agreements in order to smoothly transition into the exclusive arrangement once the two condition precedents were satisfied.

26.    On June 23, 2015, Sinotau signed and sent to Navidea an exclusive license agreement ("License Agreement") incorporating the material terms set forth in the "Binding Term Sheet for Exclusive License," as well as all additional terms and conditions as proposed by Navidea in its most recent proposed draft.

27.    All additional terms and conditions set forth in this License Agreement are those understood to be reasonable in the industry.

28.    One such term contemplates that both Navidea and Sinotau "understand and agree that Sinotau will form a Delaware C corporation within 30 days of the effective date of the License Agreement to contemplate the development and commercialization of the Licensed Product and to which this Agreement will be assigned."

29.    In accord with the parties' understanding, Sinotau retained counsel and began the process of forming a Delaware C corporation for this purpose—Cerveau Technologies, Inc. ("Cerveau").

30.    In expectation of acquiring the exclusive license contemplated by the "Binding Term Sheet for Exclusive License," Sinotau has invested substantial resources so that Cerveau may pursue profitable business relationships with other related companies to develop the NAV4694 technology.

31.    Sinotau, doing business as Cerveau, has already received letters of intent from two such companies.

32.    Sinotau spent months expediting the necessary requirements to ensure the development path transition was facilitated expeditiously due to Navidea's stated desire and immediate financial need to divest of the asset.

33.    In expectation of acquiring the exclusive license contemplated by the "Binding

Term Sheet for Exclusive License," Sinotau has received a letter of intent from a venture capital firm estimating that additional and substantial capital could be raised for Cerveau quickly from outside investors.

34.     To date, Navidea has refused to abide by the terms of the "Binding Term Sheet for Exclusive License" by entering into an exclusive licensing agreement with Sinotau subject to the material terms contemplated by the parties.

35.     To date, Navidea has refused to sign the License Agreement that Navidea itself provided, or any other exclusive license agreement and has instead repudiated its obligation to do so.

36.     The value of the licensing agreement diminishes in value as time lapses and therefore Navidea's breach and repudiation continue to harm Sinotau, not only through diminution of its own contracted-for asset, but also because the diminished asset value and uncertainty impairs Sinotau's ability to favorably negotiate with prospective business partners.

37.     Upon information and belief, Navidea is refusing to honor its prior commitment because it has engaged in discussions regarding potential licensing arrangements with third parties, including Sinotau's competitors, despite its promise to refrain from doing so.

38.     Upon information and belief, Navidea has intentionally induced Sinotau to invest substantially in securing prospective and advantageous business relationships with third parties for the purpose of using Sinotau's investment to bolster the marketable value of the NAV4694 asset when negotiating with other parties in direct contravention of Navidea's agreement with Sinotau.

39.     Upon information and belief, Navidea has intentionally induced Sinotau to agree to the Binding Term Sheet for Exclusive Licensing Agreement so that Navidea can use the

agreed-upon terms and royalty schedule to create a "bidding war" with other parties and receive more favorable terms with other parties in direct contravention of Navidea's agreement with Sinotau.

## COUNT I

## BREACH OF CONTRACT

40.     Sinotau realleges and incorporates by reference Paragraphs 1 through 39 above.

41.     The "Binding Term Sheet for Exclusive License" is a binding bilateral contract between Navidea and Sinotau.

42.     Sinotau provided valuable consideration to Navidea by agreeing to a royalty schedule and promising to make lump payments in specified amounts in exchange for Navidea's promise to grant an exclusive license incorporating the material terms contemplated by the "Binding Term Sheet for Exclusive License."

43.     Navidea has failed to enter into an exclusive licensing agreement with Sinotau despite its promise to do so and therefore Navidea has breached the parties' contract.

44.     As a direct and proximate result of Navidea's breach, Sinotau has suffered and imminently will continue to suffer extensive and irreparable injury in excess of $ 75,000.00 representing Sinotau's investment in preparing to develop and market the NAV4694 and related technology, as well as attorneys' fees and costs related to this litigation.  The precise amount of damages will be proved at trial.

45.     As a direct and proximate result of Navidea's breach, Sinotau has suffered and imminently will continue to suffer damages in excess of $75,000.00 equal to the foreseeable and expected business profits Sinotau would have realized from commercialization of the NAV4694 and related technology had Navidea granted the exclusive license contemplated by the parties' agreement.

## COUNT II

## BREACH OF CONTRACT (SPECIFIC PERFORMANCE)

46.     Sinotau realleges and incorporates by reference Paragraphs 1 through 45 above.

47.     As a direct and proximate result of Navidea's breach of its promise to convey an exclusive license to develop and market the NAV4694 and related technology, Sinotau has suffered and imminently will suffer extensive and irreparable injury, loss of goodwill, harm to its business interests, and other damages, for which there is no adequate remedy at law, unless and until Navidea is restrained from its present conduct and required to abide by the terms of its agreement with Sinotau.

48.     As a direct and proximate result of Navidea's breach of its promise to not offer or discuss with any third party the opportunity to license the NAV4694 and related technology, Sinotau has suffered additional damages to the benefit of Navidea and Sinotau's competitors, which continues to accrue; as well as attorneys' fees and costs related to this litigation, and lost business in an amount to be proved at trial.

## COUNT III

## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

49.     Sinotau realleges and incorporates by reference Paragraphs 1 through 48 above.

50.     Sinotau possessed an advantageous prospective contractual relationship with pharmaceutical companies who have expressed their intent to research, develop, and help commercialize the NAV4694 product and related technology.

51.     Navidea was aware of the existence of Sinotau's prospective relationships.

52.     Navidea intentionally and knowingly induced a breaking of these relationships by failing to grant Sinotau an exclusive license relating to the NAV4694 and related technology.

53.     Navidea's interference with Sinotau's prospective business relationships was intentional and accomplished by intentionally breaching its contractual obligations to Sinotau.

54.     As a direct and proximate result of Navidea's interference with Sinotau's prospective contractual relationships, Sinotau has suffered and will continue to suffer extensive and irreparable injury, loss of goodwill, harm to its business interests, and other damages.

55.     As a direct and proximate result of Navidea's interference with Sinotau's prospective contractual relationships with its clients, Sinotau has suffered damages, which continue to accrue; as well as attorneys' fees and costs related to this litigation, and lost business in an amount to be proved at trial.

## COUNT IV (IN THE ALTERNATIVE)
## PROMISSORY ESTOPPEL

56.     Sinotau realleges and incorporates by reference Paragraphs 1 through 39 above.

57.     Navidea represented that it would grant Sinotau an exclusive license to sell and otherwise market and develop the NAV4694 and related technology with the intent that Sinotau would act on that representation to invest substantial sums in developing potential markets to the benefit of Navidea, and agree to a competitive payment schedule that Navidea intended to serve as a baseline in negotiating with other potential licensees.

58.     Sinotau acted on this representation by substantially investing in the development of NAV4694, including the solicitation of prospective business partners eager to assist in developing the commercial market for NAV4694 and related technology.

59.     As a direct and proximate result of Navidea's representations, Sinotau acted to its detriment by losing the substantial sums invested in developing these markets and preparing to compete with NAV4694 technology as part of its product portfolio.

## DEMAND FOR A JURY TRIAL

Sinotau demands a jury trial on all claims so triable.

**WHEREFORE**, Sinotau Pharmaceutical Group prays that the Court:

1.      Award Sinotau specific performance under the terms of the "Binding Term Sheet for Exclusive License" as originally agreed to by the parties;

2.      Enjoin Navidea from soliciting other contractual and/or business partners with whom to license its NAV4694 product and technology as originally agreed to by the parties;

3.      Enjoin Navidea requiring it to comply with the terms of the "Binding Term Sheet for Exclusive License" and to license its NAV4694 product and technology to Sinotau exclusively in accord with the material terms originally agreed to by the parties;

4.      Award damages to Sinotau in an amount substantially in excess of $75,000.00, the exact amount to be proved at trial, plus interest, costs, and reasonable attorneys' fees; and

5.      Award other and further relief as may be proper.


Dated: Marlborough, MA
      August 31, 2015           LAW OFFICE OF ROBERT G. MANSON


           By:  /s/ Robert G. Manson_____
                  Robert G. Manson (BBO#674457)
           398 Brigham Street
           Marlborough, MA 01752
           (508) 274-8360

                  -and-

           DORSEY & WHITNEY LLP
           J D. Jackson
           Michael Stinson
           Suite 1500, 50 South Sixth Street
           Minneapolis, MN 55402-1498
           (612) 340-2600

           *Attorneys for Plaintiff*