UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13254-RWZ

SINOTAU PHARMACEUTICAL GROUP

v.

NAVIDEA BIOPHARMACEUTICALS, INC.

MEMORANDUM OF DECISION

September 29, 2016

ZOBEL, S.D.J.

In 2015, Sinotau Pharmaceutical Group ("Sinotau") and Navidea Biopharmaceuticals, Inc. ("Navidea"), executed a Binding Term Sheet involving an exclusive license to NAV4694, a pharmaceutical imaging agent. In this lawsuit, Sinotau alleges that Navidea breached its contractual obligations to Sinotau by refusing to abide by the parties' agreement (Counts I and II) and that Navidea tortiously interfered with Sinotau's advantageous prospective business relationships (Count III). Sinotau also brings alternative claims of promissory estoppel, breach of the implied covenant of good faith, and failure to use best efforts (Counts IV, V, and VI). Navidea has moved to dismiss all claims. See Docket # 17.

I.   **Factual Background**

These facts are alleged in the plaintiff's amended complaint (Docket # 16). See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011).

Navidea holds an exclusive license that covers patent rights to NAV4694, a pharmaceutical imaging agent owned or controlled by AstraZeneca AB ("AZ"). Under an agreement entered into by Navidea's predecessor (the "Navidea-AZ License Agreement"), Navidea owns the transferrable right to manufacture, develop, and commercialize NAV4694. Between the end of 2014 and the beginning of 2015, Navidea approached Sinotau about assuming Navidea's worldwide license of NAV4694. In early 2015, Sinotau and Navidea began negotiating terms of the anticipated NAV4694 worldwide license agreement.

In March 2015, the parties signed a "Binding Term Sheet for Exclusive License" ("Binding Term Sheet"), under which Navidea agreed to grant Sinotau an exclusive license to NAV4694 subject to the "re-negotiation of the Navidea-AZ License Agreement to include economic terms acceptable to [Sinotau] as specified in the 'Updated Proposal for Worldwide Licensing of NAV4694' forwarded by [Sinotau] to [Navidea] on March 4, 2015." Docket # 16 ¶ 68 (alterations in original) (quoting the Binding Term Sheet).

After signing the Binding Term Sheet, Sinotau and Navidea exchanged draft licensing agreements. During this time, Navidea tried to renegotiate the material terms in the Binding Term Sheet. Sinotau claims that it "entertained Navidea's proposed modifications" but that the "parties never reached final agreement as to a proposed modification to the Binding Term Sheet." Docket # 16 ¶¶ 116, 119. Sinotau sent Navidea an exclusive license agreement on June 23, 2015, that included material terms from the Binding Term Sheet as well as additional terms and conditions Navidea had proposed. Navidea did not sign this license agreement nor any other exclusive license

agreement with Sinotau.  Sinotau alleges several reasons why Navidea "wanted to back away from the deal it had struck," including that it had "entertained at least one proposal from a Sinotau competitor that surpassed the economic terms set forth in the Binding Term Sheet" and that clinical results for a related drug increased NAV4694's perceived value.  Docket # 16 ¶¶ 109–111.

In August 2015, Sinotau filed the present suit, and in October 2015, it amended its complaint.  Navidea now moves to dismiss the amended complaint.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52–53 (1st Cir. 2013).  In addition to facts and documents included in or incorporated into the complaint, the court "may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'"  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

**III.    Analysis**

    **A.    Choice of Law**

The parties disagree whether Massachusetts or Delaware law should apply to Sinotau's contract and tort claims.  Federal courts sitting in diversity, as here, apply state substantive law.  See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  "In determining what state law pertains, the court must employ the choice-of-law framework of the forum state," here, Massachusetts.  Id.

"The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions," in this case, Massachusetts and Delaware.  Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004).  Because, as explained below, the outcome of the present motion is the same under Massachusetts and Delaware law, I need not resolve which state's law applies to each of Sinotau's claims.

    **B.    Counts I and II – Breach of Contract**

In Counts I and II, Sinotau alleges that Navidea breached the parties' contract by failing "to grant an exclusive license to Sinotau subject to the material terms contemplated by the Binding Term Sheet despite its promise to do so."  Docket # 16 ¶ 147.  In Count I, Sinotau seeks damages, and in Count II, an order of specific performance requiring that Navidea grant it the worldwide license to NAV4694.  Navidea raises three defenses to these counts: (1) that the Binding Term Sheet did not constitute a valid contract; (2) that the parties did not intend to be bound by the Binding Term Sheet's licensing provisions; and (3) that there was no breach as a matter of law

because the Binding Term Sheet's condition precedent was not satisfied. These arguments are insufficient to defeat Sinotau's breach of contract claims on a motion to dismiss under both Massachusetts and Delaware law.

First, Sinotau has adequately pled that the Binding Term Sheet created a valid contract. "[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000); see also Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1158 (Del. 2010) ("[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."). The Binding Term Sheet includes licensing fees and royalty rates, with the apportionment of the royalty between Navidea and AZ "dependent on the renegotiation." See Docket # 19, at 14 (quoting the Binding Term Sheet). The complaint alleges, and the incorporated Binding Term Sheet indicates, that "all material terms of the agreement are set forth" within the term sheet. Docket # 16 ¶ 65 (quoting the Binding Term Sheet). The term sheet adds that conditions and terms not set forth "will be added to the final agreement." Id. At the motion to dismiss phase, this suffices. See Situation Mgmt. Sys., Inc., 724 N.E.2d at 703 ("It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract."); Pantzer v. Shields Dev. Co., 660 F. Supp. 56, 60 (D. Del. 1986) ("The question of what is an essential term is often a question of fact involving a determination of each party's intent to be bound, and thus must frequently be decided by a jury.").

Second, the complaint adequately alleges an intent to be bound. The complaint describes that Sinotau and Navidea had been business partners and had previously entered into a different licensing agreement. The complaint alleges that "Navidea was aggressively seeking to divest the NAV4694 asset in order to save money" and that Sinotau "was the natural choice to take on the worldwide rights to NAV4694" because, inter alia, "Navidea needed to quickly divest the asset, and to the extent Sinotau was selected as the worldwide licensee, the transaction could close more quickly." Docket # 16 ¶¶ 32, 35, 38. Navidea points to the term "Effective Date," defined as "the date of execution of the final binding agreement" between Sinotau and Navidea and argues that this term indicates that the Binding Term Sheet becomes binding only upon a future final agreement. See Docket # 17-1, at 11 (quoting the Binding Term Sheet). However, this "Effective Date" term alone is insufficient to demonstrate that the Binding Term Sheet is unenforceable, particularly in light of the complaint's allegations about the parties' intentions and the final paragraph of the Binding Term Sheet, which states that the agreement sets forth "binding terms and conditions which, as of the date of signing . . . the parties have agreed form the basis of their transaction." Docket # 16 ¶ 63 (alteration in original) (quoting the Binding Term Sheet). "The intent of the parties is generally a question of fact," Anchor Motor Freight v. Ciabattoni, 716 A.2d 154, 156 (Del. 1998), and the determination of whether parties intended to be bound "must be premised on the totality of all such expressions and deeds given the attendant circumstances and the objectives that the parties are attempting to attain," Black Horse Capital, LP v. Xstelos Holdings, Inc., No. CIV.A. 8642-VCP, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014) (quoting Debbs v. Berman, No. CIV.A. 7973, 1986 WL 1243,

at *7 (Del. Ch. Jan. 29, 1986)); see also Seaco Ins. Co. v. Barbosa, 761 N.E.2d 946, 951 (Mass. 2002) ("Where . . . the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial."). The complaint provides enough well-pleaded facts to suggest that upon signing the parties intended to be bound by the terms in the Binding Term Sheet.

Third, the complaint plausibly alleges that Navidea breached the Binding Term Sheet, notwithstanding the condition precedent that Navidea renegotiate the Navidea-AZ License Agreement. The relevant condition in the term sheet provides that the renegotiation of the Navidea-AZ License Agreement would "include economic terms acceptable to [Sinotau] as specified in the 'Updated Proposal for Worldwide Licensing of NAV4694' forwarded by [Sinotau] to [Navidea] on March 4, 2015." Docket # 16 ¶ 68 (alterations in original) (quoting the Binding Term Sheet). The March 4, 2015, Updated Proposal states that "Navidea shall use best efforts" to renegotiate the economic terms with AZ. Docket # 16 ¶ 70 (quoting the Updated Proposal for Worldwide Licensing of NAV4694). The complaint alleges that "AZ proposed economic terms that were consistent with the economic terms set forth in the Binding Term Sheet, and Sinotau directed Navidea to accept AZ's proposal," but "Navidea never responded to AZ's proposal, and instead determined to intentionally 'run the clock' on the diligence period." Docket # 16 ¶¶ 86, 88. It further alleges that "Navidea's failure to make any effort to continue discussions with AZ . . . constitute[s] a breach of the parties' Agreement by Navidea for failing to use its best efforts to renegotiate the AZ-Navidea License Agreement." Docket # 16 ¶ 90. This suffices at the motion to dismiss stage.

The motion to dismiss Counts I and II is DENIED.

**C.     Count III – Tortious Interference with Advantageous Business Relations**

In Count III, Sinotau claims that Navidea intentionally interfered with Sinotau's advantageous prospective relationships by refusing to grant Sinotau a license to NAV4694 and breaching its contractual obligations to Sinotau.

Under Massachusetts law, to state a claim for tortious interference with business relations, a plaintiff must allege the following elements:

> (1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages.

Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996); see also Shafir v. Steele, 727 N.E.2d 1140, 1144 n.10 (Mass. 2000) (explaining that the elements in Swanset "are elements of intentional interference with advantageous relations, which does not require a contract").  The elements of this tort are similar under Delaware law.  See DeBonaventura v. Nationwide Mut. Ins. Co., 428 A.2d 1151, 1153 (Del. 1981) (listing the elements of tortious interference with prospective business opportunities as "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner" (quoting DeBonaventura v. Nationwide Mut. Ins. Co., 419 A.2d 942, 947 (Del. Ch. 1980))); see also U.S. Bank Nat'l Ass'n v. Gunn, 23 F. Supp. 3d 426, 436 (D. Del. 2014) ("To meet the intentional interference prong, a plaintiff must prove that the defendant's

interference with a business opportunity was intentional and wrongful or improper.").

Sinotau's allegations survive the motion to dismiss. According to Sinotau, it pursued relationships with pharmaceutical companies to help research, develop, and promote NAV4694. Sinotau claims that Navidea was aware of these efforts and "intentionally and knowingly induced a breaking of these relationships by failing and refusing to grant Sinotau an exclusive license relating to the NAV4694 and related technology." Docket # 16 ¶ 159. Sinotau also alleges that "Navidea's interference with Sinotau's prospective business relationships was intentional and accomplished by intentionally breaching its contractual obligations to Sinotau." Docket # 16 ¶ 160. As a result of this interference, Sinotau alleges that it has suffered and will suffer damages, including costs and lost business. Docket # 16 ¶¶ 161–162. Whether the alleged interference was improper or wrongful is a fact-specific inquiry. See DeBonaventura, 428 A.2d at 1154 ("The determination of whether an actor's conduct is 'privileged' or 'not improper'. . . is particularly factual, depending on a wide variety of factors to be applied to all of the facts and circumstances in a given case."); Cavicchi v. Koski, 855 N.E.2d 1137, 1142 (Mass. App. Ct. 2006) ("Improper means include violation of a statute or common-law precept," and "[a]s to improper motive, evidence of retaliation or ill will toward the plaintiff will support the claim."); see also Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 246 (Mass. App. Ct. 2004) (declining to "decide on this record whether breach of a contract by itself makes out the 'improper means' element of tortious interference because there was no evidence that the defendant in fact breached this particular agreement"). Sinotau's allegations suggest that Navidea's interference may have been improper or wrongful under both

Massachusetts and Delaware law, a question that is better addressed at a later stage in the proceedings.

Navidea also contends that Sinotau cannot bring a claim for interference because the prospective relationships with which Navidea allegedly interfered belonged to Cerveau Technologies, Inc. ("Cerveau") — a Delaware C corporation that Sinotau had begun to form to develop NAV4694 — not Sinotau. However, the complaint alleges that Cerveau has not yet been formed and that it was Sinotau that possessed the relevant, albeit prospective, advantageous relationships. See Docket # 16 ¶¶ 130–132, 155. Whether these prospective relationships in fact belonged to Cerveau, as Navidea claims, is irrelevant to the current inquiry, the adequacy of the complaint. The motion to dismiss Count III is DENIED.

  **D. Count IV, V, and VI (In the Alternative)**

Because the plaintiff can move forward on Counts I, II, and III, the court need not address the alternative claims at this time.

**IV. Conclusion**

The defendant's motion to dismiss (Docket # 17) is DENIED as to Counts I, II, and III.

  September 29, 2016       /s/Rya W. Zobel
     DATE             RYA W. ZOBEL
              SENIOR UNITED STATES DISTRICT JUDGE